SOMMERS v. CITY OF FLINT.

1. EQUITY—PLEADING—MOTION TO DISMISS.
   Plaintiff's well-pleaded facts are accepted as true for purposes of ultimate disposition of a motion to dismiss his bill of complaint.

2. WORDS AND PHRASES—PUBLIC USE.
   The term "public use," in considering State and municipal activities sought to be brought within its meaning, is to be liberally construed in view of the changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and communication, the test not being based upon the function or capacity in which or by which the use is furnished

REFERENCES FOR POINTS IN HEADNOTES
[2] 37 Am Jur, Municipal Corporations § 120.
[3] 14 Am Jur, Courts § 81.
[4] 20 Am Jur, Evidence § 16 et seq.
[5] 37 Am Jur, Municipal Corporations § 120.
[6] 38 Am Jur, Municipal Corporations §§ 401–403.
   Constitutional prohibition of municipal corporation lending its credit or making donation as applicable to sale or leasing of its property. 161 ALR 518.
[8] 52 Am Jur, Taxpayers' Actions § 3.
   Right and capacity of taxpayer to attack sale by municipal corporation or other taxing unit of its property. 17 ALR2d 475.

but upon the right of the public to receive and enjoy the benefit of the use.

3. Courts—Stare Decisis—Precedents.

A 4-to-3 decision of the Supreme Court of but 2-1/2 years' standing to too recent and too close a margin to carry great weight under the doctrine of *stare decisis*.

4. Evidence — Judicial Notice — National Defense — Municipal Corporations—United States.

The Supreme Court takes judicial notice of the heightened mutuality of obligation between a city and the nation in the matter of national defense at the present point in history.

5. Municipal Corporations—Public Funds—Site for Training Reserves of Armed Forces.

The furnishing of a site for the training of the young men of a city in reserve components of the armed forces of the United States is a lawful public purpose for the expenditure of funds of the city.

6. Same—Conveyance to United States—Consideration—Credit—Public Corporations.

The conveyance by a city of park land for which it paid $50,000 in 1920 and with a present market value of over $100,000 for a consideration of $35,000 to a committee which in turn was to convey a restricted base fee thereof to the United States for training of reserve components of the armed forces *held*, not violative of provisions of Constitution prohibiting the grant of credit of the State, and municipal corporations as an arm thereof, "in aid of any person, association or corporation, public or private," since no use of credit is involved and the United States government, the ultimate grantee, is not customarily regarded as a public corporation in this constitutional sense, overruling *Younglas* v. *City of Flint*, 345 Mich 576 (Const 1908, art 10, § 12).

7. Same—Master Plan—Conveyances of Property by City.

It is not illegal for a city which has adopted a master plan of the city to convey property owned by the city for use of the United States government, where the site is not alleged to be required under such master plan (CLS 1956, § 117.5, subd [e]).

8. Appeal and Error—Questions Reviewable—Due Process—Vested Rights—Taxpayer's Suits.

No due process question *held*, to have been presented by taxpayer whose bill to invalidate city's deed of property for ultimate use by the United States failed to plead that plaintiff

had any vested rights in the maintenance of the site in city
ownership or in its operation as a park.

9. DEEDS—UNITED STATES—PARTIES.

Motion to dismiss bill of complaint to invalidate conveyances of
property whereby the United States government acquired the
use of the land as site for training reserve components of the
armed forces is granted, where the legal title is shown to be
in the United States but it is not made a party.

10. COSTS—PUBLIC QUESTION.

No costs are allowed in suit to set aside conveyances for armory,
where public questions are involved.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Genesee; Gadola (Paul V.), J. Sub-
mitted June 17, 1958. (Docket No. 58, Calendar
No. 47,519.) Decided April 13, 1959.

Bill by John Sommers, for himself and on behalf
of the taxpayers of the City of Flint, against the
City of Flint, a municipal corporation, and its board
of commissioners to invalidate deed conveying public
park land to a civic committee, which land was then
conveyed to the Federal government for use as a
military reserve training center, and to enjoin future
disposition thereof. Motion to dismiss on jurisdic-
tional grounds denied. Defendants appeal. State
of Michigan intervenes on appeal for purposes of
securing ruling as to transactions pertaining to its
public lands. Reversed.

*William J. Kane* and *Don W. Mayfield,* for de-
fendants.

*Paul L. Adams,* Attorney General, *Samuel J.
Torina,* Solicitor General, *Nicholas V. Olds* and
*Jerome Maslowski,* Assistants Attorney General, for
intervenor State of Michigan, asking reversal.

EDWARDS, J. For some years the city of Flint
has desired to convey to the United States govern-

ment a parcel of city-owned property located in the city of Flint, known as Kearsley Grove, for the purpose of erecting thereon a national guard armory. An attempt by the city in 1955 to accomplish this transfer of the property for the purpose stated and without any remuneration was defeated by taxpayer suit which was ultimately decided by this Court—albeit by a narrow 4–3 margin. *Younglas* v. *City of Flint,* 345 Mich 576.* The majority opinion there held (p 579):

"The proposed transfer of the city property, without consideration, to the United States government, even though beneficial to the general public, amounts to an appropriation which is not for a city public purpose, an application thereof to public uses not under the control or care of the city, and, hence, void."

From the bill of complaint filed in the matter currently before this Court, we learn that the city was by no means discouraged in its purpose. We presume the city commission noted the term "without consideration" used above, for the bill of complaint informs us:

"On or about the 27th day of December, 1956, the 9-man Flint city commission, with Commissioner Delling absent, voted 8 to 0 to sell the property known as Kearsley Grove at a private sale without bids, for a reported price of $35,000, to the Committee of Sponsors of the Flint Cultural Development, and on or about the same day, the mayor and clerk signed a deed, purporting to convey said property in the style and manner above related."

The bill of complaint likewise alleges city ownership of the land and its operation as a public park since 1920, and the plaintiff's interest as a neighboring property owner who relied upon the park's

* Decided May 14, 1956.—Reporter.

existence. It also alleges that the city paid over $50,000 for the land, that it has a fair market value in excess of $100,000, and that the sale was actually a gift. The suit sought a decree holding the conveyance void as violative of *Younglas, supra,* and restraining the city from any further acts seeking to convey Kearsley Grove.

Defendants moved to dismiss the bill of complaint, claiming principally that the court did not have jurisdiction since the grantees of the deed (more particularly the ultimate grantee, the United States government) were not joined as parties. Attached to the motion was an affidavit attesting execution of 2 deeds, copies of which were also attached as exhibits.

One of these deeds, dated December 27, 1956, was from the city of Flint and purported to convey Kearsley Grove to the Committee of Sponsors for the Flint College and Cultural Development, Inc., for the sum of $35,000. It described the purpose of the transaction as being that of permitting the committee to convey to the United States government, with a reversion to the city of Flint in the event the United States government ceased for a period of 3 years to use same "for training of reserve components of the armed forces." The second deed was dated the same day and purported to run from the Committee of Sponsors to the United States of America for the purposes and on the conditions just described. Both deeds showed the recording stamps of the Genesee county register of deeds of December 28, 1956.

We have examined with care plaintiff's answer to the motion to dismiss and can only conclude that in effect it admits the authenticity of these 2 exhibits for purposes of the motion to dismiss although denying the legal effect claimed for them and, on the

contrary, claiming that the deeds are null and void on constitutional grounds.

The chancellor who heard the motion denied it, holding the court had jurisdiction. Thereupon defendant city of Flint filed an application for leave to appeal which was granted by this Court September 4, 1957.

Prior to submission of the appeal to this Court, the attorney general of Michigan intervened on behalf of the people of the State (CL 1948, § 14.28 [Stat Ann 1952 Rev § 3.181]), to advance the following argument:

"That the donation of land by the city of Flint in the *Younglas Case* and thereafter the sale of the same land to a corporation for a substantial consideration, which corporation in turn conveyed it to the United States, did not violate article 10, § 12, of the Constitution (1908), inasmuch as the United States government is not 'any person, association, or corporation, public or private.' "

The attorney general's brief disclosed concern pertaining to "the legality of a large number of transactions in which the various departments of the State, particularly the conservation department, under legislative authorization made numerous conveyances of State-owned property and gave long-term leases to the United States of America for no monetary consideration in furtherance of the national defense." Subsequently appellant city of Flint, by supplemental brief, expressed agreement with the brief of the intervenor attorney general.

It is plain that what appellant and the intervenor now seek is the overruling of this Court's holding in *Younglas, supra,* as it applies to the current fact situation. Although this question was not presented to the chancellor below (who obviously had no power to decide it), we feel the current appeal cannot

properly be disposed of without passing upon the issue thus posed by the intervenor attorney general.

For purposes of ultimate disposition of defendants' motion to dismiss, we accept plaintiff's well-pleaded facts. *Dodge* v. *Blood,* 299 Mich 364; *Society of Good Neighbors* v. *Mayor of Detroit,* 324 Mich 22. Among these are: (1) that the city of Flint acquired the site in question for $50,000 in 1920; (2) that it has a present market value of over $100,000; (3) that the consideration for the deed is $35,000; and (4) that the difference represents a gift without consideration even though made for the purposes and on the conditions recited in the deeds.

The 2 constitutional provisions which *Younglas, supra,* held to bar the gift of this site to the United States were article 8, § 25, which reads, in part:

"No city or village shall have power  *  *  *  to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose,"

and article 10, § 12, which reads:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

Four members of the Court, in an opinion by the Chief Justice, held the transfer without consideration to be void because not "for a city public purpose;" and, by implication, held the United States government to be a public corporation within the meaning of article 10, § 12, Const (1908).

Three members of the Court concurred in a view expressed in an opinion by Mr. Justice BLACK, holding the contrary on both issues. In holding that the proposed conveyance was for a public purpose within the meaning of article 8, § 25, the minority opinion relied upon language from 37 Am Jur, Municipal Corporations, § 120, pp 734, 735, previously·

quoted by this Court in *Hays* v. *City of Kalamazoo*, 316 Mich 443, pp 453, 454 (169 ALR 1218):

"A public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and communication. The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances.    *    *    *    The modern trend of decision is to expand and liberally construe the term 'public use' in considering State and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private."

The views on this topic have been recently and carefully considered by this Court in the 2 opinions in *Younglas*. What has changed is not the reasoning of the members of the Court, but the composition of the Court itself. *Younglas* was decided too recently and by too close a margin to carry great weight under the doctrine of *stare decisis*. The majority of this Court, as presently constituted, feels that the modern and authoritative view on the constitutional questions presented is that of the minority opinion in *Younglas* which we hereby adopt and incorporate by reference.

The United States government and the city of Flint are not strangers to each other in the matter of national defense. We take judicial notice of the heightened mutuality of obligation in this field at the present point in history.

Briefly, we hold that the furnishing of a site for the training of the young men of Flint in reserve components of the armed forces of the United States

is a lawful public purpose for the expenditure of funds of the city of Flint. *Opinion of the Justices,* 297 Mass 567 (8 NE2d 753); *Hodgdon* v. *City of Haverhill,* 193 Mass 406 (79 NE 830).

See, also, *Stanley* v. *Schwalby,* 162 US 255 (16 S Ct 754, 40 L ed 960); *Vrooman* v. *City of St. Louis,* 337 Mo 933 (88 SW2d 189); *Hayes* v. *City of Kalamazoo, supra; Brozowski* v. *City of Detroit,* 351 Mich 10.

We also hold that this transaction does not violate article 10, § 12, of the Michigan Constitution (1908). No use of credit is involved. *City of Blytheville* v. *Parks,* 221 Ark 734 (255 SW2d 962). Nor is the United States government customarily regarded as a "public corporation" in this constitutional sense. *McNichols* v. *City and County of Denver,* 101 Colo 316 (74 P2d 99).

See, also, *Malone* v. *Peay,* 159 Tenn 321 (17 SW2d 901); *Vrooman* v. *City of St. Louis, supra;* 15 McQuillin, Municipal Corporations (3d ed), § 39.30. The contrary views expressed in the majority opinion in *Younglas, supra,* are overruled.

We note that the bill of complaint does not allege that the site is required under the master plan of the city of Flint (see CLS 1956, § 117.5, subd (e) [Stat Ann 1957 Cum Supp § 5.2084, subd (e)]), although plaintiff's brief before the court below concedes that there is such a master plan. See *Brozowski* v. *City of Detroit, supra,* 14.

Finally, since we cannot find from the well-pleaded allegations of the bill of complaint that plaintiff had any vested rights in the maintenance of this site in city ownership or in its operation as a park, no due process question is presented.

On the facts as stated and conceded in plaintiff's pleadings and the legal conclusions contained in this opinion, there is a showing of legal title to this property in the United States government. The

motion to dismiss should be granted. *Stanley* v. *Schwalby, supra.* *Cf., United States* v. *Lee,* 106 US 196 (1 S Ct 240, 27 L ed 171).

Our decision in *Peoples Savings Bank* v. *Stoddard,* 351 Mich 342, did not alter the long-standing rule that on motion to dismiss the Court may consider all well-pleaded facts in plaintiff's bill of complaint plus any facts stipulated to or conceded by the pleadings of the parties for purposes of said motion. Our decision herein is founded upon the well-pleaded facts in plaintiff's bill of complaint plus the deeds referred to, authenticity (though not validity) of which we view as conceded.

Reversed and remanded for entry of order as indicated in this opinion. No costs, public questions being involved.

SMITH, BLACK, and VOELKER, JJ., concurred with EDWARDS, J.

CARR, J. (*dissenting*). In 1920 the defendant city acquired by purchase certain lands for use for park purposes. Since that time the property has been so used. Recently officials of the city have sought to convey a portion of the park area to the government of the United States to be used in connection with the training of reserve components of the armed forces of the government. As appears from the opinions in *Younglas* v. *City of Flint,* 345 Mich 576, it was first sought to make the conveyance for the purpose indicated without consideration moving to the city. Certain taxpayers instituted suit in equity to obtain injunctive relief against the proposed action. In a 4-to-3 decision of this Court it was held that the proposed transfer amounted to an appropriation of public property other than for a city public purpose, and not subject to control by the city. For such reason the injunctive relief sought

was granted in this Court.    The case was decided May 14, 1956.

On the 27th of December, 1956, the defendant commission undertook to authorize the sale of the property in question, referred to as Kearsley Grove, to a corporation known as the Committee of Sponsors for the Flint College and Cultural Development, Inc., for the sum of $35,000.    On the same day a deed was prepared in accordance with the action of the commission, the instrument of conveyance specifying that the purpose thereof was to permit the grantee to make conveyance to the United States of America, subject to the provision that in the event the government ceased to use the land for the training of reserve components of the armed forces for a period of 3 years, exclusive of any period of actual hostilities, title to the land conveyed should vest in the defendant city, reserving, however, the ownership of any fixtures, structures or signs upon the property, to the Federal government.

In conjunction with the execution of the deed above referred to a conveyance from the grantee corporation to the United States of America was executed, both deeds being recorded on December 28, 1956. Under this conveyance the government was given the right to erect structures on the land which should remain the property of the government to be removed or disposed of as it might deem proper, and it was further specified that the property should be used for the purpose before indicated, namely, the training of reserve components of the armed forces under the supervision of the United States, its officers and representatives.    The provision for reverter of title as contemplated by the intermediate conveyance was also inserted.

On January 11, 1957, plaintiff in this case, acting in his own behalf and on behalf of the taxpayers of the city of Flint, instituted the present suit for the

purpose of obtaining injunctive relief restraining the transfer of the property in question. The bill of complaint alleged the acquisition and use of the land for park purposes, that the defendants under the municipal charter were without power to dispose of it in the manner and for the purpose indicated, that the health, safety, and general welfare of the community would not thereby be advanced, and that plaintiff would sustain injury if the park property were transferred to the government to be used for the purpose contemplated by the conveyances thereof. It was further alleged, on information and belief, that the city, in 1920, had paid in excess of $50,000 of public tax money for the land in question, and that at the time of the filing of the bill of complaint its fair market value was in excess of $100,000. It was asserted that because of this situation the specified price of $35,000 to be paid to the city by the intermediate grantee was less than the actual value, and that in effect the surplus of such value over and above the amount so to be received constituted a gift. Based on the allegations of the facts as set forth in the pleading plaintiff asked the court to decree that the attempt to make the conveyance in question was *ultra vires* and, hence, null and void, and further enjoining defendants from proceeding with the contemplated transfer of the title to the property.

Defendants filed motion to dismiss the bill of complaint, alleging that title to the land known as Kearsley Grove had been transferred to the United States of America, that the government was an indispensable party to the suit, that it had not consented to be sued in the State court, and that, in consequence, no relief could be granted to the plaintiff. In support of the motion affidavits were filed setting up the action of the city commission, the execution of the deed by the city of Flint to the corporation known as the Committee of Sponsors for the Flint College and

Cultural Development, Inc., and the execution and recording of the deed by said intermediary to the government of the United States. Plaintiff by answer to the motion denied that title to the park area had so vested, and asserted that the deeds referred to were null and void. In support of such claim plaintiff contended that the action of the city was in violation of the decree of this Court in *Younglas* v. *City of Flint, supra,* and that the conveyance was executed without authority and without the receipt of proper and adequate consideration therefor. It was further averred that there was no evidence before the court that the deed to the government had been delivered and accepted. For the reasons so set forth, the plaintiff denied that the Federal government was an indispensable party to the suit.

Following the submission of the motion to dismiss, the circuit judge, under date of June 26, 1957, filed his opinion in the case, calling attention to the basis of the motion and pointing out that in ruling on it all matters of fact well pleaded in the bill of complaint must be accepted as true. The judge concluded that the case should not be dismissed at the time for the reason set forth in the motion, emphasizing that he was not passing upon the legality of the transfer originally made by the city inasmuch as the controversy in that respect presented an issue of fact. An order was entered in accordance with the opinion and defendants, on leave granted, have appealed.

It will be noted that the sole question raised by the motion to dismiss was whether, accepting as true the averments of factual matters set forth in the bill of complaint, the government of the United States was an indispensable party, and in consequence that the suit must fail because it had not intervened and could not be sued without its consent. Opposed to this position as taken by the defendants the plaintiff in-

sisted, as before noted, that the action of the defendants was wholly void and, hence, no title passed. In short, the position of the plaintiff is well summarized in the statement of the supreme court of Kentucky in *Walker* v. *City of Richmond*, 173 Ky 26, 31 (189 SW 1122, Ann Cas 1918E, 1084), that:

"In short, it has become recognized as a truism that what a municipality has no power to do, it has not done merely because it tried to do it."

In accord with the quoted statement is the discussion in 37 Am Jur, Municipal Corporations, § 116, pp 730, 731.

In view of the nature of the question presented to the circuit judge, and on which he passed, attention may properly be given to the holding of this Court in *Peoples Savings Bank* v. *Stoddard*, 351 Mich 342. In that case a motion to dismiss the bill of complaint was granted by the trial judge on the ground of lack of jurisdiction in the State court. A majority of the members of this Court hearing the matter on appeal disapproved of such method of disposing of the case. The prevailing opinion, written by Mr. Justice VOELKER and concurred in by Justices EDWARDS, BLACK and SMITH, expressed the view that matters were involved that could not properly be decided (p 357) "in advance of full evidentiary proofs." It was, therefore, ordered that the decree entered in the circuit court should be reversed and set aside, and "the cause remanded to proceed to issue and hearing on the merits." The action taken was consistent with the ruling of the trial judge in the instant case, particularly so in view of the limited nature of the motion to dismiss.

Counsel for defendants, in asserting that the Federal government was an indispensable party, relied on *United States* v. *Alabama*, 313 US 274 (61 S Ct 1011, 85 L ed 1327). This was a suit to quiet title

against tax liens and sale of the property for taxes. Under the State statute the liens attached prior to the acquisition of the land by the government of the United States. The proceedings culminating in the sale of the property and claimed acquisition of title by the State of Alabama were subsequent in point of time. The court declined to cancel the liens, but held that the government was a necessary party in the proceedings for the satisfaction of such liens. There was in the case no queston but that the government was the owner of the property at the time the sale for taxes was conducted. In the case at bar it is contended that for the reasons set forth in the bill of complaint, and principally because of lack of power to convey the property in question, the government did not acquire title and, hence, is not an indispensable party in the pending suit.

The principal question at issue on the merits of the instant case is whether the attempted conveyance to the Federal government, if effected, may be regarded as in fulfillment of a proper "public purpose." Such term must be construed in a case of this nature as denoting a purpose within the scope of municipal powers existing under the Constitution and laws of the State and the municipal charter adopted in accordance therewith. Stated more specifically, may it be said that the establishment of facilities on the property in question for the training of reserve components of the armed forces of the United States government would constitute an authorized purpose of the city of Flint to be accomplished in the manner disclosed by the facts in the instant case? This question was given full consideration in *Younglas* v. *City of Flint, supra,* and the conclusion was reached by a majority of the members of the Court participating in the case that the appropriation of the property in question to the government of the United States to be used in the carrying out of a function of that gov-

ernment was not "for a city public purpose." We think the conclusion reached was correct.

Municipal corporations are organized for purposes of local self-government, subject to the general laws of the State, and also as governmental agencies of the State. Statutory creation and regulation are, of course, subject to pertinent constitutional provisions. Bearing in mind the source of its powers a municipality must look for the measure of its authority in any particular to the Constitution and statutes of the State. Its powers are delegated to it. It does not possess inherent sovereignty in the proper sense of the term, being limited in the exercise of functions that may be considered as of such nature by State authority under which it exists.

In the instant case the defendant city is not empowered to itself establish facilities for training reserve components of the Federal armed forces. Our attention is not directed to any provision of the Constitution or the statutory law of the State conferring authority to appropriate its property for such purpose. Whether the legislature could enact a valid law conferring such authority is a matter not before us for consideration. For the purposes of the instant case it is sufficient to say that the legislature has not made any such attempt.

An exercise of power by the city of Flint must serve a public or municipal purpose in order to be legal. Generally speaking, such public purpose "has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation." 37 Am Jur, Municipal Corporations, § 120, p 734. Limitations on the powers of cities of the State of Michigan were pointed out in *Attorney General, ex rel. Lennane,* v. *City of Detroit,* 225 Mich 631. In discussing the proposition, Mr. Justice Fellows, who wrote the

opinion of the Court, after considering constitutional provisions with reference to the authority of the electors of cities and villages to adopt charters under legislative authority, and "to pass all laws and ordinances relating to its municipal concerns subject to the Constitution and general laws of this State,"* pointed out that the general exercise of all police power of the State was not vested in municipalities. In reaching such conclusion, it was said (p 638):

"Nor do the constitutional provisions above quoted work such result. While the municipality in the performance of certain of its functions acts as agent of the State it may not as such agent fix for the State its public policy. That power has not been delegated to these agents of the State. Unless delegated in some effective way the police power remains in the State."

It was held that the power sought to be exercised by the city of Detroit in said case was not within the purview of statutory authority providing for the exercise of municipal powers.

Municipal property may not be appropriated to any use other than a municipal use, in the absence of a requirement under valid State law that it be subjected to the carrying out of a State purpose or objective. No claim is made that any State purpose or objective is involved in the instant case, nor has the State undertaken to grant authority or impose an obligation in any way affecting the matters at issue. If property of the city is sold the consideration received must be used for the benefit of the municipality and of its inhabitants. It may be noted in this connection that statutory recognition of a right to sell park property when not required under an official master plan of the city (CLS 1956, § 117.5, subd (e) [Stat Ann 1957 Cum Supp § 5.2084, subd

---

* See Const 1908, art 8, § 21.—REPORTER.

(e)]) does not authorize a conveyance of such property without consideration, or for partial consideration only. The transaction in question here does not involve a municipal purpose within the scope of the city's powers of local self-government, and our attention is not directed to any provision of the Constitution or statutory law granting, or attempting to grant, to the city as an agency of the State, the authority sought to be exercised.

We are not dealing in this case with action by the State in aid of the Federal government in the observance of any function of the latter. However, it has been repeatedly declared that a municipality created by the State, and subject to State control in its activities, may not lawfully do that which the State itself may not do. For such reason the decision of this Court in *Trombley* v. *Humphrey,* 23 Mich 471 (9 Am Rep 94), is of significant interest. In that case there was involved an act of the State legislature, adopted in 1867, that by its terms undertook to authorize and empower the governor of the State to obtain title to land, not exceeding 160 acres in extent, for the purpose of conveying the same to the United States for the erection and maintenance of lighthouses. The procedure outlined by the statute was duly followed. Commissioners were appointed who appraised the property, and fixed the compensation to be paid by the State at the sum of $17,496.84. When informed of the amount of the award the representative of the Federal government in charge of the lighthouse department informed the governor that the amount was excessive and that acceptance of the land was declined. The owner of the land insisted on payment, and an action in mandamus was instituted for the purpose of compelling the auditor general to issue his warrant in the amount awarded. The question at issue was the constitutionality of the statute. In holding it to be invalid the Court, speak-

ing through Mr. Justice Cooley, said in part (481–483):

"It may be said that there is no constitutional provision which expressly declares that the State shall have no authority to appropriate property for the public uses of the United States, and that the powers not prohibited may, on general principles, be exercised. But any such express prohibition would be an act of supererogation. All constitutions are subject to certain implications, which are as effectual limitations upon power as if expressly declared. One of these is that the Constitution itself is made to define, limit and apportion the powers of the government it creates or controls, and not those of some other government or authority. * * * Another implication is, that the powers, which the Constitution defines, limits and apportions are to be exercised within the limits of the sovereignty which creates it, so that a prohibition of their being exercised elsewhere would be a mere idle formality. We are not told by the Constitution of this State that its criminal laws shall not apply to offenses committed within the limits of sister States; but an enactment that they should so apply would, as has been well said by the supreme court of New Jersey, be void upon general principles. * * * This Court held, in *People, ex rel. Detroit & H. R. Co.,* v. *Township of Salem,* 20 Mich 452 (4 Am Rep 400), that a legislative act originating proceedings by, or in pursuance of, which, individual property was to be taken under the forms of taxation for the benefit of a private corporation, could not be justified as an exercise of legislative power. It was not, therefore, due process of law. In many cases the courts, while recognizing to the fullest extent the right of the legislature to exercise discretionary legislative authority except as forbidden, have nevertheless enforced the implied limitation that the authority exercised, which assumes to be legislative, must be legislative in fact. (Citing cases.) If a power is not within the general delegation of authority made by the people,

it cannot be necessary to forbid its exercise by a department whose whole authority comes from the delegation. Such is the case here. The authority delegated to the legislative department is to legislate for the State, and not for the nation.

"For the reasons assigned, the legislation in question is void. The enactments before us could not be adopted by the legislature, because not within the sphere of State powers. They, therefore, constitute an attempt to appropriate the property of individuals without due process of law; and the State authorities were justified at any point in abandoning the proceedings taken under them."

In *Kohl* v. *United States,* 91 US 367 (23 L ed 449), the reasoning in the *Trombley Case* was approved. It was also recognized that the Federal government may exercise its power of eminent domain within the States so far as necessary to the carrying out of the powers conferred by the Constitution. In *Darlington* v. *United States,* 82 Pa 382 (22 Am Rep 766), the reasoning of Mr. Justice Cooley was likewise approved. Such reasoning is applicable to the situation presented in the case at bar.

Counsel have cited decisions upholding conveyances by States to the Federal government for certain purposes, and in some instances transfers of property by municipalities. In each such instance, however, it has been made to appear that the State, or the municipality, obtained a benefit conducive to the welfare of its people and within the general scope of its purposes. Thus in *Yarborough* v. *North Carolina Park Commission,* 196 NC 284 (145 SE 563), the transaction between the State and the Federal government involved the condemnation of and transfer of property by the State to the United States for a national park. It was recognized that the people of North Carolina would be mainly benefited by the contemplated action. It may be noted,

also, that the State had the power to establish parks so that, as a factual proposition, the State was con- tributing to a result that it might have directly ac- complished. Obviously such is not the situation in the case now before us. No claim is made that the city of Flint has the power to construct a facility for use in the training of reserve components of the armed forces of the Federal government.

*Hodgdon* v. *City of Haverhill,* 193 Mass 406 (79 NE 830), cited by Justice Edwards in his opinion, is scarcely in point. Involved was an act of the legis- lature of the State providing for the construction of armories for the maintenance and benefit of the *militia of the State.* Said act required the defendant city to acquire the necessary land and erect the build- ing. It was held that the legislature had the power to authorize or require cities and towns to construct armories for militia companies stationed therein. It was further declared that such municipalities might be required to bear such share of the public burdens as the legislature deemed just and equitable. The court also pointed out that under the facts in the case the armory would constitute a proper public purpose for the city in that stationing militia there would be conducive to the welfare of residents of the munici- pality.

In *Opinion of the Justices,* 297 Mass 567 (8 NE2d 753), the opinion was rendered with reference to pro- posed legislation to authorize the city of Salem to take land, by condemnation proceedings, title to which should be turned over to the Federal govern- ment for the establishment of a memorial in the city to the sailors of Salem. Such contemplated action was in accordance with an act of Congress relating to the placing of historic monuments. It was recog- nized that taxes may be levied for public municipal purposes only, but the court concluded that the establishment of a memorial in honor of the sailors of

the city was for the benefit of said city and that, in consequence, the money to be raised for the acquiring of the necessary land was for a public municipal purpose.

Likewise in other decisions that have been called to our attention the factor of local interest and benefit was found in each instance. Detailed discussion of these cases would serve no useful purpose. In the case at bar it does not appear that the inhabitants of the city of Flint, or the municipal government, would derive such a benefit as to constitute a public municipal purpose. The deeds of conveyance do not reserve to the city or its inhabitants the right of use in any manner of the proposed facility to be established by the government of the United States. There is no intimation in the bill of complaint, or elsewhere for that matter, that the said facility will be open to any measure of public use. It is apparent that any such result would rest entirely on sufferance and in the discretion of representatives of the armed forces of the Federal government. Such condition is emphasized by comparison with the situation presented in *Brozowski* v. *City of Detroit,* 351 Mich 10. The question there at issue was whether the city could properly transfer to the county of Wayne certain lands owned by it constituting a portion of a park, but not required under any official master plan of the city, to facilitate the construction of a home for neglected and abandoned children subject to the jurisdiction of the probate court of Wayne county. In sustaining the right of the city to assist the project in the manner indicated, it was pointed out that 2/3 of the population of the county resided in the city of Detroit and that the proposed institution would provide care for children from within the city, primarily an obligation under the municipal charter. It thus appears that the city was aiding in the accomplish-

ment of a purpose that it might itself have effected directly.

For the reasons indicated we conclude that the circuit judge was right in denying the motion to dismiss. Such order should therefore be affirmed, and the case remanded for further proceedings involving the joining of issue and the taking of proofs.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

KAVANAGH, J., did not sit.