WESTBROOK *v.* ELDER.

1. Adoption—Heirship—Common Law.
   Heirship by adoption is unknown to common law.

2. Same—Conflict of Law—Right of Adopted Child to Inherit—Statutes.
   Where, at time contract for plaintiff's adoption was executed in Province of Ontario, Canada, there was no enabling statute under which child by adoption would inherit adoptive parents' property, effect may not be given said contract in Michigan other than it had in Ontario, and therefore plaintiff's suit to be declared sole heir of adoptive parent was properly dismissed.

Appeal from Sanilac; Boomhower (Xenophon A.), J. Submitted June 7, 1933. (Docket No. 30, Calendar No. 37,159.) Decided June 29, 1933.

Bill by Olive May Westbrook against Robert Elder and others to have herself declared to be sole heir of Rachel Blair Mitchell, deceased, and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*West & Benedict,* for plaintiff.

*Paul Woodworth,* for defendants.

POTTER, J. Plaintiff filed a bill to have herself declared to be the sole heir at law of Rachel Blair Mitchell, deceased; the sole owner of all her property, real and personal, subject to her debts and the expenses of administering her estate; reform an adoption agreement by which it was claimed Rachel Blair Mitchell adopted plaintiff, and cut off the rights of those who would otherwise be the heirs of decedent. From a decree for defendants, plaintiff appeals.

Plaintiff's mother, April 7, 1907, entered into a written contract with Rachel Blair Mitchell and her husband, a copy of which appears in the margin.*

---

* "This agreement made the 7th day of April in the year of our Lord 1907. Between Florence Elton of the city of Detroit, U. S., in the county of............in the province of............of the first part and Fred H. and Ray Blair Mitchell of the Kilworth Bridge of............in the county of Middlesex and province of Ontario of the second part.

"Witnesseth, that whereas the said party of the first part, Florence Elton, the parent of a female child named Olive May Elton which said child is of the age of four years.

"And whereas, it has been agreed by and between the parties hereto that the said part.... of the second part shall take and adopt the said Olive May Elton and care for, govern, educate, and rear her in the same manner as if she was their own child.

"And whereas the said part.... of the first part willing and doth agree that the said child shall be so adopted, and that the said

Plaintiff claims after the execution of this contract she continued to live with the Mitchells until her marriage, when she was 19 years of age; at her marriage the Mitchells bought her bridal veil;

part.... of the second part and those whom they may appoint, shall have the care, government, education, rearing, and control of the said child, and doth agree to give up all rights to the said child, and to the care, government, education, rearing, and control of the said child, and doth agree to bind herself not to interfere with or influence the said child, or seek to recover possession or control of her or to remove her from the custody and control of the said part.... of the second part without their consent first had and received in writing.

"Now, therefore, this agreement witnesseth, that the said party of the first part, of her own free will and desire for the good and advantage of the said child, and being aware that she is not able financially to keep, maintain, rear, and educate the said child, and in consideration of the premises and of the covenants and agreements herein contained on the part of the said part.... of the second part, to be observed and performed, doth hereby surrender, and give up said child for adoption to the said part.... of the second part and doth relinquish all her rights and powers, in respect of the care, custody, control, education, maintenance, government, and rearing of the said child, and transfer the same to the said part.... of the second part, and to those whom they may appoint in place and stead with full power and authority to call the said child by whatever name or names they may deem best.

"And doth covenant and agree with the said parties of the second part, and their heirs, executors, administrators, or assigns, and the person or persons by them appointed in their place, and that she will not at any time hereafter revoke or attempt to revoke these presents, and the rights, powers and benefits, herein conferred on the said part.... of the second part, or those who may be entitled to take their place hereunder, and will not regain or attempt to regain the care, control, custody, or government of the said child, or to influence her in her education, conduct, or behavior, or in any other way or manner interfere with the rights herein conferred, or intended so to be, upon the said parties of the second part, and that she will at all times hereafter execute any papers or documents that may be necessary or expedient for the more effectually carrying out the purposes herein set forth, or intended so to be, and for transferring to the said parties the rights herein contained.

"And doth covenant and bind her heirs, executors, administrators, and assigns to abide by, observe, keep, and perform all the conditions, obligations, and agreements herein contained to be by them kept, observed, and performed, and doth also covenant and agree that the said agreements, conditions, and obligations herein contained may be enforced by the said parties of the second part, or their heirs, executors, administrators, or assigns, or the person or persons who may hereunder be appointed to take the place of the said parties of the second part.

Rachel Blair Mitchell, who was a physician, helped deliver her first two children and bought various articles for her children; frequently visited her, wrote her letters, gave her the home to live in with-

"And doth also covenant and agree that if she or any person or persons claiming through or under her shall commit any breach of any of the provisions and agreements herein contained on her part she will forfeit and pay to the parties of the second part, or the person or persons in their place hereunder, the sum of $1,000, and that any judge of the superior court of Ontario shall have full power and authority to enforce the performance and compel the observance of such conditions and agreements as are herein contained.

"And the said parties of the second part, in consideration of the premises and of the said child to them do hereby accept and adopt the said child, and do assume the duties of parents towards the said child, and do hereby agree to perform the duties of parents according to the station in life of the parties of the second part toward the said child in like manner as if she were their own child, and will protect, maintain and educate her providing for her a home and suitable food and clothing, and in case of sickness, medical attendance, medicines, and all other necessaries, in the same manner as if she were their own child, and will pay due attention to her moral and spiritual welfare and culture, and afford her an opportunity of becoming instructed in the teachings and doctrines of Christianity during the period of the guardianship as aforesaid. In witness whereof the parties hereto have hereunto set their hands and seals.

"Witness to the signature of:

"RAY BLAIR MITCHELL,
"FRED H. MITCHELL,
"FLORENCE ELTON.

"Province of Ontario, to-wit—ss:

"I, James Percy Moore, a notary public for the Province of Ontario by royal authority only appointed, residing at the city of London in the said Province, do certify that the within paper writing is a true copy of the original agreement for adoption now on deposit in the safety box of Rachel Blair Mitchell, deceased, in the vault of the Canada Trust Company at London, Ontario, the said copy having been compared by me with the said original document, an act whereof being requested I have granted under the notarial form and seal of office to serve and avail as occasion shall or may require.

"London, Ontario, December, 13, 1928.

"J. P. MOORE,
"A Notary Public for the
Province of Ontario.

"My commission is for life."
(Notarial seal)

out rent, gave her husband money to repair the house, told others she intended to give her property to plaintiff, and did not want her other heirs to receive any of her property.

In *Wright* v. *Wright,* 99 Mich. 170 (23 L. R. A. 196), the court had under consideration proceedings to adopt complainant therein, under 2 How. Stat. § 6379 *et seq.,* declared unconstitutional in *People* v. *Congdon,* 77 Mich. 351. The prevailing opinion by Justices Long and McGrath is based upon the theory of implied contract to adopt, fully carried out and performed. The concurring opinion of Mr. Justice Grant on the theory equity should declare that to be done which the parties clearly intended to be done. The dissenting opinion of Justices Montgomery and Hooker proceeded on the theory that void judicial proceedings could not thus be made valid.

A similar question was before the court in *Albring* v. *Ward,* 137 Mich. 352, where the opinion of the court was prepared by Mr. Justice Grant, who had concurred with Justices Long and McGrath in *Wright* v. *Wright, supra.* It is there said:

"Heirship, except that based upon consanguinity, can be created only by a constitutional law by which 'relations of paternity and affiliation are recognized as legally existing between persons not so related by nature.' Heirship by adoption is unknown to the common law."

The contract involved here was made in Ontario, Canada. It is undisputed that in 1907, when this contract was made, there was no such thing, in the Province of Ontario, as adoption, the Ontario adoption act not having been passed until 1921. At the time the contract was entered into in 1907, adoption could not be had in the Province of Ontario of any

child whereby such child, by adoption, would inherit its adopted parents' property. There was no procedure whereby such an order could be made, and the agreement did not have that force; and, under the Ontario statute of 1921, the agreement here involved would have no effect whatever.

We cannot give to the contract here involved an effect different than it had in the place where it was executed and performed. Such contract here will be given no broader effect than it had in Ontario.

In *Albring* v. *Ward, supra,* it is said:

"If *Wright* v. *Wright* is construed by the profession to mean that void articles of adoption can afford the basis of a contract for heirship, it should, in my judgment, be overruled."

*Bowins* v. *English,* 138 Mich. 178, involved specific performance of a contract by which it was claimed a child was adopted as the heir at law of John G. English. It is said:

"We held in *Albring* v. *Ward,* 137 Mich. 352, that heirship, except that based upon consanguinity, can be created only by a constitutional law."

Neither by the law in Ontario, the sanction of which gave validity to the contract; the law of Michigan where the contract is sought to be modified and enforced as modified, nor by the facts presented, is plaintiff entitled to recover.

Decree of the trial court affirmed, with costs.

McDONALD, C. J., and CLARK, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.