YOUNGLAS v. CITY OF FLINT.

1. TAXATION—PUBLIC USES UNDER CONTROL OF TAXING BODY.
   Taxes and loans, when authorized to be raised by any public body, must be raised under the implied condition that they are to be applied to the public uses under the control or care of that body.

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 387.
[2] 38 Am Jur, Municipal Corporations § 487.

2. MUNICIPAL CORPORATIONS—TRANSFER OF PROPERTY—CONSIDERA-
   TION—CONSTITUTIONAL LAW.

   A proposed transfer of city property, without consideration,
   heretofore used for park purposes, to the United States gov-
   ernment for use as a site for a reserve armory school, al-
   though beneficial to the general public, amounts to an appro-
   priation which is not for a city public purpose, an application
   to public uses not under the control or care of the city
   would be void under provisions of the State Constitution, hence,
   is subject to injunction at suit of city taxpayers (Const 1908,
   art 8, § 25, art 10, § 12).

3. COSTS—PUBLIC QUESTION—INJUNCTION—TRANSFER OF CITY PROP-
   ERTY—CONSIDERATION.

   No costs are allowed in taxpayers' suit to enjoin proposed trans-
   fer of city property, without consideration, to United States
   government, a public question being involved.

SMITH, BOYLES, and BLACK, JJ., dissenting.

Appeal from Genesee; Roth (Stephen J.), J. Sub-
mitted January 5, 1956. (Docket No. 31, Calendar
No. 46,590.) Decided May 14, 1956.

Bill by Clara Younglas and Elsie Van Huff
against the City of Flint, a municipal corporation,
and its board of commissioners, to enjoin transfer of
park property to Federal government for use as
military reserve training center. Bill dismissed.
Plaintiffs appeal. Reversed and decree ordered to
enter.

*Maurice D. Wilbur* and *Chester J. Antieau,* for
plaintiffs.

*William J. Kane* and *Don W. Mayfield,* for defend-
ants.

DETHMERS, C. J. Plaintiffs, as taxpayers of de-
fendant city, seek to enjoin defendants from convey-
ing, without consideration therefor, city property,
used as a public park, to the United States govern-

ment as a site for a reserve armory school. After hearing on a show cause order and on the merits a decree entered denying injunctive relief and dismissing plaintiffs' bill of complaint. They appeal.

Plaintiffs urge, as controlling, Michigan Constitution of 1908, art 8, § 25, which reads, in part:

"No city or village shall have power  *  *  *  to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose."

and article 10, § 12, which reads:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

These constitutional provisions were held applicable to and controlling of the situation in *Detroit Museum of Art* v. *Engel,* 187 Mich 432. There the plaintiff, a private corporation, served a public purpose and its operations were conducted solely for the benefit of the general public, the city had title to the property it used and occupied, and the city had representation on its board of directors. This Court, nonetheless, held violative of the above constitutional provisions a statute empowering the city to appropriate public funds for plaintiff's support and maintenance because it was not a municipal agency and did not serve a city public purpose. This Court quoted therein from *Attorney General* v. *Board of Supervisors,* 34 Mich 46, 48, the following:

"Taxes and loans, when authorized to be raised by any public body, must be raised under the implied condition that they are to be applied to the public uses under the control or care of that body."

Such was the language employed by this Court in the latter case to arrive at the conclusion that a resolution of a county board of supervisors was void:

which provided for the raising of money by the county to be paid over to the towns within it for expenditure by the latter on their roads and bridges.

Defendants contend that the mentioned constitutional provisions have no application to the facts at bar under our holding in *Hays* v. *City of Kalamazoo*, 316 Mich 443 (169 ALR 1218). With that we are not in accord. We there upheld a city appropriation for a service which we found to be beneficial to the city government. In so doing (p 455) we distinguished that case from the *Detroit Museum Case* on the express grounds that, although in the *Museum Case* the invalid appropriation for the museum would have been "for the benefit of the general public," nevertheless, it "did not serve a city public purpose" while that in the *Kalamazoo Case* did serve a city public purpose. Under the reasoning of the above cases it follows in the case at bar that the proposed transfer of the city property, without consideration, to the United States government, even though beneficial to the general public, amounts to an appropriation which is not for a city public purpose, an application thereof to public uses not under the control or care of the city, and, hence, void. To same effect, in a situation directly in point, see Opinions of the Attorney General 1935, 1936, p 394, and cases therein cited.

Decree below reversed and set aside. A decree may enter here providing for permanent enjoining of defendants from making the proposed conveyance without consideration. No costs, a public question being involved.

SHARPE, KELLY, and CARR, JJ., concurred with DETHMERS, C. J.

BLACK, J. (*dissenting*). In 1947 this Court adopted as Michigan law (*Hays* v. *City of Kalamazoo*, 316 Mich 443, 453, 454 [169 ALR 1218]) the text appear-

ing in 37 Am Jur, Municipal Corporations, § 120, pp 734, 735, as follows:

"A public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and communication. The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances. * * *: The modern trend of decision is to expand and liberally construe the term 'public use' in considering State and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private."

The act of adoption of the foregoing text did succeed in rendering more palatable *Hays'* ruling that the regular contribution of municipal funds, to and for—yes—lobbying purposes, was valid as against the same objection plaintiffs make in the instant case. True, the court clothed the abhorrent word "lobbying" with the elegant language of a Chesterfield, but the disrobed purport of *Hays* nevertheless was that of legalization of hiring by Kalamazoo of a corporate "legislative agent" with consequent devotion of municipal funds raised by taxes to such "city public purpose."

Now it is said, through majority opinion signed by several of the justices whose signatures bolster *Hays,* that the transfer "without consideration" of municipal property hitherto constituting a part of a public park in Flint, to the United States for combined use as a military reserve training center and "local public purposes," amounts to an invalid "appropriation which is not for a city public purpose."

To be perfectly frank about it, our Court is now on
record as holding that contribution of municipal
property to the purpose "of giving to the legislature
information with reference to the subject matter of
proposed or anticipated (municipal) legislation" is
quite right by Constitution and law, and as holding
that the contribution of municipal property for the
combined purpose just noted—a purpose that in-
cludes, with other public use, Flint's part in educat-
ing her youth in the defense of our country—is quite
wrong by the same laws of our peninsular land.

Since the parallel ruler by which we chart consti-
tutional and statutory course through Flint and
Kalamazoo is the same for both cases—"the promo-
tion of the public health, safety, morals, general wel-
fare, security, prosperity and contentment,"—I
respectfully suggest that we either step up with
*Hays*-overruling signatures or follow the quoted
rule of *Hays* in this definitely clearer case of devo-
tion of public property to a swiftly developing and
provably necessitous public purpose. That purpose,
I apprehend, will subserve to greater extent the
health, welfare, security and contentment of Flint's
inhabitants than will the regular devotion of Flint's
tax-raised funds to lobbying services.

The chancellor, by opinion filed below, said of the
mentioned "purpose":

"The evidence further revealed that the army pro-
poses to erect a building, I believe, on the southern
portion of this parcel, a building whose cost will run
between a quarter and a half million dollars. The
colonel who will be in charge of the establishment, if
one is established, testified that other installations of
a like nature have been run on a certain plan of use;
that while it is used or erected for the purpose of
providing a reserve training center, that all the in-
stallations presently established in the State of
Michigan on a like basis are used for local public pur-

poses greatly in excess of the time devoted to training purposes."

His reasoning, based on the foregoing, fits the leading case of *Opinion of the Justices* (1937), 297 Mass 567 (8 NE2d 753).* There the supreme court of Massachusetts held that the city of Salem might lawfully be authorized to transfer, by deed of conveyance to the United States "without monetary consideration," certain to-be-acquired park lands to be used under act of congress as "an historic monument." The court said (pp 575, 576):

"The act of congress authorizes the United States to accept a gift of this nature. There seems to be no limitation upon its power to accept conveyance of the land from the city of Salem after the latter has acquired title to the land. Transfer of title to the land to the United States after its taking by the city of Salem would not affect the main public uses for which it was taken. The conveyance to the United States by the city of Salem must be made for the purposes described in the proposed statute. We think that the act of congress authorizes the acceptance of a conveyance of that nature. Conveyance of the land, after being taken by the city of Salem for the purposes enumerated in the proposed statute, to the United States, to be administered in compliance with the act of congress, would not render the park any the less public in its nature than it would be if the title were retained by the city. The proposed ultimate ownership would not make the taking in the first instance any less a taking for a public use. After such conveyance, the land will remain in the same place and will be available for the benefit of the public of Salem in company with the general public as if there were no conveyance. The management

---

* This case is included in present counsel Antieau's third edition of Professor Seasongood's "Cases On Municipal Corporations" (Callaghan, 1953), commencing at page 191, and it is presented therein to law students, with other leading cases, as showing the "present state of the law of municipal corporations."

and operation, however, must be in accordance with the specified act of congress. Local control will no longer exist. There are numerous decisions upholding the constitutionality of statutes similar to the one here proposed. We are not aware of any decisions to the contrary. (Citing cases at length.)"

The opinion of Attorney General Crowley to which my Brother refers (OAG, No 167, 1935, 1936, p 394), has not been overlooked. I will only say (as this Court did 10 years later) that permissible public uses change and expand with changing conditions, and I will add that this country, and every municipality therein, is burdened with duties respecting local as well as national security that were unknown in the nineteen thirties; that devotion of municipal property thereto has indeed become a public use, and that it is error to assert that a conveyance of the nature proposed by Flint will be made "without consideration" simply because no money passes from sovereign government to local government.

*Stanley* v. *Schwalby,* 162 US 255 (16 S Ct 754, 40 L ed 960), speaks with clarity in support of the point that consideration if required is amply existent here. The court said (p 276):

"A valuable consideration may be other than the actual payment of money, and may consist of acts to be done after the conveyance. (Citing authority.) The advantage inuring to the city of San Antonio from the establishment of the military headquarters there was clearly a valuable consideration for the deed of the city to the United States."

We may see the day when every village and every city will find it necessary with or without conveyance to Uncle Sam to devote a portion of the municipal lands to actual as well as educational preparation for national defense. This Court, following its own *Hays*-made precept, should, hence, get in step and

not get in the way. Such an essential "city public purpose" can as much be served as "public use changes" on land titled in the United States as in the city itself, and that should be the essence of our decision in this case.

The remaining question posed by plaintiffs is deemed unsubstantial.* The defendant city does not propose to "sell" Kearsley Grove. It does propose to transfer it by lawful means to a new and dual public use. The city commission's judgment that the new public use will be of equal or greater service to the inhabitants of Flint than the present is well within the discretion vested in these elective officials and the judiciary has no right to interpose its judgment with respect thereto. The ultimate fact of this case is that Kearsley Grove will, if title, as proposed, be transferred to the national government, continue in genuine public service under new public management. Once that is settled, our inquiry should end because there will have been no sale so far as present section 5 of the home-rule act is concerned. It is consequently unnecessary to determine whether Kearsley Grove is or is not "required" under an official master plan of the defendant city within meaning of the exception set forth in said section 5.

Believing that the chancellor's decree is right as against presently reviewed objection to the city commission's action, I vote to affirm with remand, however, for due assurance to the inhabitants of Flint of that which was testified to, by the mayor of Flint, with respect to cooperative public use and reversionary stipulations in the intended deed of conveyance. Pursuing the doctrine that equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete re-

* Counsel for plaintiffs rely upon the restriction against sales of municipal park lands set forth in section 5 of the home-rule act (CLS 1954, § 117.5 [Stat·Ann 1955 Cum Supp § 5.2084]).

lief, it is our duty to see by instructed supplemental decree, to be entered below, that the mentioned asseverations as shown in the mayor's testimony and in the park board's resolution of April 27, 1955 (on which the city commission of Flint assumed to act), are appropriately reflected in the resolved conveyance and are made consistent with the act or acts of congress under which the secretary of the army and the city commission are assuming to proceed.

The chancellor's decree should be affirmed, without costs and the case remanded with instructions as indicated.

SMITH, J., concurred with BLACK, J.

BOYLES, J., concurred in the result.

The late Justice REID took no part in the decision of this case.