## KEENAN *v.* COUNTY OF MIDLAND.

DECISION OF THE COURT.

1. COUNTIES—DEATH OF MINOR AT SWIMMING BEACH—SUMMARY JUDGMENT.

Order granting defendant county's motion for summary judgment in action against it and others for death of child at swimming beach owned, operated, and staffed by defendants is reversed and cause remanded for trial.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SMITH, O'HARA, and ADAMS, JJ.

2. COUNTIES—ABROGATION OF GOVERNMENTAL IMMUNITY—DEATH OF MINOR AT SWIMMING BEACH.

*Abrogation of rule of governmental immunity as to counties in tort cases pending at time of such abrogation applied to instant case, an action to recover damages from county for death of a 5-year-old child at a swimming beach operated by the county, pending on appeal at time of abrogation.*

3. STATES—GOVERNMENTAL IMMUNITY FROM TORT LIABILITY.

*The State and its agencies, including school districts, have remained immune from tort liability since the abrogation of*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7, 13] 39 Am Jur, Parks, Squares, and Playgrounds § 39.
Municipal operation of bathing beach or swimming pool as governmental or proprietary function, for purposes of tort liability. 55 ALR2d 1434.
[3] 49 Am Jur, States, Territories and Dependencies §§ 91, 96, 100–102.
[4] 5 Am Jur 2d, Appeal and Error § 1009.
[5, 8, 9, 11] 20 Am Jur 2d, Courts §§ 189, 195.
[6, 10] 20 Am Jur 2d, Courts §§ 233–236.
[12] 16 Am Jur 2d, Constitutional Law § 210 *et seq.*

the rule as to political subdivisions; the statute pertaining to
liability of the State and governmental agencies for negli-
gence is controlling from its effective date (PA 1964,
No 170).

4. C<small>OSTS</small>—D<small>EATH</small>—C<small>OUNTIES</small>.

No costs are allowed on appeal from summary judgment for
defendant county in action by administrator of estate of
5-year-old child arising out of drowning at a swimming beach.

S<small>EPARATE</small> O<small>PINION</small>.
S<small>OURIS</small>, J.

5. C<small>OURTS</small>—M<small>AJORITY</small> N<small>ECESSARY</small> <small>TO</small> G<small>IVE</small> P<small>RECEDENTIAL</small> W<small>EIGHT</small>
<small>TO</small> D<small>ECISION</small>.

A decision of the Supreme Court does not attain precedential
force unless a majority of the full Court agrees on a rationale
for decision.

6. S<small>AME</small>—P<small>RECEDENTS</small>—E<small>X</small> P<small>OST</small> F<small>ACTO</small> E<small>FFECT</small>.

The Supreme Court cannot give precedential force to a pre-
viously rendered decision that was without precedential force
at the time it was decided, but may give such prior decision
precedential force prospectively.

7. C<small>OUNTIES</small>—N<small>EGLIGENCE</small>—A<small>BROGATION</small> <small>OF</small> D<small>OCTRINE</small> <small>OF</small> G<small>OVERN</small>-
<small>MENTAL</small> I<small>MMUNITY</small>.

Claims against a county for negligent injury are limited to
period commencing 3 years prior to date of abrogation of
doctrine of governmental immunity by the Supreme Court
in the decision rendered herein and terminating upon the
effective date of statute pertaining to liability of governmental
agencies, inclusive of counties, for negligent injuries (CLS
1956, § 609.13; CLS 1961, § 600.5805; PA 1964, No 170).

D<small>ISSENTING</small> O<small>PINION</small>.
B<small>LACK</small>, J.

8. C<small>OURTS</small>—P<small>RECEDENTS</small>.

Language of an opinion subscribed to by less than a majority
of an appellate court does not constitute a precedent for
future guidance.

9. S<small>AME</small>—P<small>RECEDENTS</small>—M<small>AJORITY</small>.

No point of law is established by an appellate court where the
members unanimously or by majority vote to reach a decision
but cannot, even by a majority, agree on the reasoning therefor.

10. SAME—OVERRULED CASES—PROSPECTIVE BASIS.
    *Overruling of a case should be on a wholly prospective basis.*

11. SAME—PRECEDENTS.
    *Five unrestricted indorsements of an opinion of the 8-man Supreme Court are necessary to constitute it a precedent even though there be but 7 Justices participating in the case.*

DISSENTING OPINION.
DETHMERS and KELLY, JJ.

12. CONSTITUTIONAL LAW—GOVERNMENTAL IMMUNITY—SEPARATION OF POWERS.
    *The power to extend, modify, or abrogate the doctrine of governmental immunity is wholly legislative in character and is not vested in the judiciary.*

13. COUNTIES—SWIMMING BEACH—DROWNING—GOVERNMENTAL IMMUNITY FROM LIABILITY FOR TORTS.
    *The common-law doctrine of governmental immunity from liability for torts of agents and employees of a municipal corporation, not having been abrogated or modified by the legislature as to counties engaged in operating a swimming beach, may properly be made the ground for granting county's motion for summary judgment in action against it by administrator of estate of 5-year-old child who drowned at the beach.*

Appeal from Midland; Holbrook (Donald E.), J. Submitted March 2, 1965. (Calendar No. 60, Docket No. 50,573.) Decided January 5, 1966.

Declaration by Francis Keenan, administrator of the estate of Kimberly Keenan, against the county of Midland, township of Jerome, William A. Francis and Mary K. Francis, doing business as Francis Grove Beach, Duane Valerio, and Vernon M. Meier for the wrongful death of Kimberly Keenan, who drowned at a beach that was owned, operated, and staffed by defendants. Summary judgment for defendant county. Proceedings stayed pending outcome of appeal by plaintiff. Reversed and remanded.

*Cicinelli, Mossner, Majoros & Harrigan (Peter F. Cicinelli* and *Eugene D. Mossner,* of counsel), for plaintiff.

*Stanton, Taylor, McGraw & Collison (John Davidson,* of counsel), for defendant county.

ADAMS, J. This lawsuit results from the drowning of a 5-year-old child. Death occurred in July, 1960, at a swimming beach in Midland county. For purposes of decision on motion for summary judgment,[1] the beach was acknowledged to have been operated by the county of Midland. Defendant was granted a summary judgment, the trial court reasoning that, under prior decisions of this Court, the county of Midland was engaged in a governmental function. The court also reasoned that since the alleged tort occurred prior to decision of this Court in *Williams* v. *City of Detroit,* 364 Mich 231, the rule of governmental immunity, if abrogated by that case, was nevertheless a bar to a claimed cause of action which arose prior to September 22, 1961.

On March 1, 1965, one day before oral argument in this case, in *Myers* v. *Genesee County Auditor,* 375 Mich 1, this Court, with seven members sitting, by reversing and remanding for trial, decided by a clear majority of those participating to abrogate the rule of governmental immunity as to counties, thus overruling *Lewis* v. *Genesee County,* 370 Mich 110, and also held that said abrogation was applicable to "pending and future cases."

Inasmuch as this case was pending at the time of decision in *Myers,* the application of the rule of governmental immunity is no longer valid. The case is remanded to the trial court for vacation of the order granting summary judgment as to de-

---

[1] See GCR 1963, 117.—REPORTER.

fendant county of Midland and for such further proceedings as may be appropriate.

*Myers* abolished (until the effective date, July 1, 1965, of PA 1964, No 170) the defense of governmental immunity as to all political subdivisions of government not theretofore abolished. The State and its agencies, including school districts, remained immune from tort liability. *McDowell* v. *State Highway Commissioner,* 365 Mich 268; *Sayers* v. *School District No. 1, Fractional,* 366 Mich 217. The problem now, and as of July 1, 1965, is governed by the provisions of PA 1964, No 170 (CL 1948, § 691.1401 *et seq.* [Stat Ann 1965 Cum Supp § 3.996(101) *et seq.*]). Our decision here does not affect the provisions of article 7, § 6, of the Constitution of 1963.

No costs.

T. M. KAVANAGH, C. J., and SMITH and O'HARA, JJ., concurred with ADAMS, J.

SOURIS, J. (*concurring in reversal*). Once again, as in *Myers* v. *Genesee County Auditor* (1965), 375 Mich 1, 12, 13, I cast my vote to overrule *Lewis* v. *Genesee County* (1963), 370 Mich 110. I join also in vacating the summary judgment entered in defendant's favor in this case of Keenan and in remanding the cause for trial.

While five of the seven participating Justices in *Myers* joined in our decision to reverse and remand the trial judge's decision in *Myers,* only four of us planted our decision upon abrogation of the rule of governmental immunity as applied to tort actions against counties, Mr. Justice BLACK having concurred only in the result of Mr. Justice O'HARA's opinion. The question becomes, then, whether the decision of the four Justices out of seven participating in *Myers,* to abrogate the rule of county im-

munity to tort actions, carries precedential weight for other like cases including the case at bar. There is apparent authority in Michigan that it does, that a decision of a majority of participating Justices, even when made by less than a majority of the full Court, shall be regarded thereafter as of precedential force under the doctrine of *stare decisis. Dolph* v. *Norton* (1909), 158 Mich 417. While I acknowledge that the *Dolph Case* can be read, as it appears to have been in *Scott* v. *Sullivan* (1911), 164 Mich 467, in support of adding the weight of *stare decisis* to a decision of four out of seven participating Justices of an eight-member Court, I do not believe that such a reading survives careful analysis.

In *Dolph* v. *Norton* the question arose whether decision in that case was controlled by the Court's prior decision in *Weller* v. *Wheelock* (1908), 155 Mich 698. The *Weller Case* was first submitted to the Court on January 10, 1908. Before decision therein, Mr. Justice CARPENTER resigned from the Court on September 15, 1908, and his replacement, Mr. Justice BROOKE, was not elected until November, 1908. 154 Mich iii. In the meantime, on October 8, 1908, *Weller* v. *Wheelock* was reargued to the Court, then consisting only of seven Justices. The Court's decision in *Weller* was announced on November 30, 1908. It was by a four-to-three division of the Court, a Court which consisted only of seven Justices at the time the case was reargued in October. In the following year, in *Boughner* v. *Bay City* (1909), 156 Mich 193, doubt was cast by the Court upon the precedential weight to be given its earlier decision in *Weller,* the decision in that case having received the approval of less than five Justices. 156 Mich 198, 199.

Then, in *Dolph* v. *Norton,* seven of the eight Justices participating in *Dolph* signed an opinion con-

ceding the weight of *stare decisis* to *Weller* v. *Wheelock* in the following language (p 422):

"All of the Justices, there being at the time but seven, participated in the decision of *Weller* v. *Wheelock.* I find no good ground for declaring that in such a case the decision of a majority shall not be received as *stare decisis,* as establishing the law, not only for the particular case but for other like cases. There remains, of course, the right and the duty to overrule decisions found to be erroneous."

This quoted statement followed a short discussion by the Court of its then current practice, sanctioned by statute (PA 1903, No 250), of sitting for the transaction of business in panels of five Justices and of calling for resubmission of cases to the full Court whenever the five Justices to whom the case originally was submitted were unable to agree, the stated practice resulting (p 422) "in expediting the business of the Court and in securing, what is desirable, the concurring opinion of a majority of the Judges."

Thus, the majority's decision in *Dolph* v. *Norton,* insofar as here pertinent, stands for no more than this: When a decision is reached by a majority of the Justices of the Court, as the Court is constituted at the time the case is submitted for decision, that decision thereafter is to be considered of precedential weight as to the issues decided by such majority. Arguably, *Dolph* v. *Norton* could be read to mean that a decision made by a majority of participating Justices, whether a majority of the full Court or not, is of precedential weight by virtue of the doctrine of *stare decisis,* as appears to have been the reading of *Dolph* v. *Norton* by the Court in *Scott* v. *Sullivan* (1911), 164 Mich 467. But, for the reasons stated, I do not believe such a reading survives careful analysis of the majority's opinion in *Dolph* v. *Norton.*

Furthermore, the objectives sought to be achieved by the doctrine of *stare decisis*—stability of law and its concomitant predictability—are far more certain of achievement when a majority of the full Court commits itself to a statement of law binding on all other courts in the State and subject to change thereafter only upon further action by a majority of the full Court, by the people themselves by constitutional amendment, or, in some cases, by legislative action. On those relatively few occasions when less than a majority of the full Court agrees upon the rationale for decision, it seems desirable to me to leave any question of law not resolved by a majority of the Court open for our Court of Appeals and our trial courts to decide as a matter of first impression, the discussions of the issue in our divisive opinions providing, hopefully, intellectual stimulus to our bench and bar in the lower courts. Similarly, new trial and appellate court decisions on different but similar facts involving the same issue, when appealed to this Court, would provide our membership another opportunity for contemplation of the issue and, hopefully, for ultimate majority accord in its resolution. That process, it seems to me, conforms with our common-law tradition whereby the body of judicial law is developed on a case-by-case basis and whereby no issue is resolved for the future until a court's majority reaches accord and only so long as that court's majority maintains that accord.

The foregoing views considered, I agree with Justice Black that while a majority of this eight-member Court joined to reach decisional accord in *Myers* v. *Genesee County Auditor* (1965), 375 Mich 1, a majority of this Court, as distinguished from a majority of the participating Justices, did not agree upon a rationale for decision and, therefore, our decision in *Myers* cannot be regarded as of precedential force in this case of Keenan.

Nor am I able to agree that the Court now can give to *Myers, ex post facto,* that precedential force which it did not achieve when we announced our decision in *Myers* in March of 1965. The effect of our decision and opinions in this case of Keenan, as I understand them, is, therefore, that, while only a minority of the Justices would regard *Lewis* as having been overruled as of March of 1965, a majority (T. M. KAVANAGH, C. J., and SOURIS, SMITH, O'HARA, and ADAMS, JJ.) agrees that *Lewis* is overruled at least as of our decision today. The significance of this distinction lies in the fact that, in addition to all pending cases, only those claims against counties for negligent injury which arose after the commencement of the three-year statutory[1] limitational period preceding our decision today and prior to July 1, 1965, the effective date of PA 1964, No 170,[2] rather than those which arose within the three-year period prior to our decision in *Myers,* in March of 1965, will be freed from the common-law defense of county immunity to actions for negligent injury, which defense we abrogate today by overruling *Lewis.*

BLACK, J. (*dissenting*). When this case of Keenan came up for discussion on March 2d, following oral submission that day, the writer suggested that the bootless nature of stalemated *Myers* v. *Genesee County Auditor,* 375 Mich 1 (signed and released the day before submission of Keenan) called for an order to rehear *Myers,* on motion of the Court, prior to resumption of more divisive writing for Keenan. The suggestion was followed up, during the April

[1] The limitational period applicable in this case of Keenan is found in CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605). See, currently, CLS 1961, § 600.5805 (Stat Ann 1962 Rev § 27A.5805).

[2] CL 1948, § 691.1401 *et seq.* (Stat Ann 1965 Cum Supp § 3.996 [101] *et seq.*).

session, by a formal motion for entry of such an order. A majority of the Justices did not agree, however, and so trifarious *Myers* confronts the Court as some yet unknown majority tries now to find some recordable reason for some result of Keenan's case.

It is high time that the profession be informed as to how and why these occasional aberrations of the Court do occur. When two or more discordant opinions for one case are proposed, a minority and sometimes a majority of our members have no idea, and can get no information, respecting the signature intention of other members of the Court. The Court by long tradition proceeds to play—on opinion day— a sort of showdown poker game. No one knows, as the separate opinions are passed around our conference table for signature, what cause or principle is due to prevail and what cause or principle is due to fail. And when the respective signatures are totted up and the signed opinions are sent in to the clerk, those opinions regularly (*Myers* is an example) leave members of the profession wondering whether they or members of the Court have become lightheaded. As for the result, it stands, inexorable as death and taxes, unless a rehearing is ordered.

Look at *Myers*. Of the Court's participating membership[1] two Justices (O'HARA and T. M. KAVANAGH) voted for extension of the *Williams* rule[2] of nonimmunity "to all political subdivisions," not including, however, "The State, its departments, commissions, boards, institutions, arms, or agencies." No other Justice supported that. Two more Justices (SOURIS and ADAMS), finding themselves unable to "subscribe his [Justice O'HARA's] opinion because of the different views we take of the recent

---

[1] Justice SMITH did not participate in the *Myers Case*, 375 Mich 1, 13.—REPORTER.

[2] *Williams* v. *City of Detroit*, 364 Mich 231.—REPORTER.

decisions of this Court herein cited," joined "in the result reached by Justice O'HARA," saying that the "result" was "to overrule Lewis v. Genesee County (1963), 370 Mich 110." No other Justice supported that. Two more Justices (DETHMERS and KELLY) dissented unreservedly. The seventh participant was the writer. He concurred in the result, that only, of Justice O'HARA's opinion. That result— there could be no other result of the mountain's mighty groan in labor—was vacation of a summary judgment entered for the defendant county and remand of the case "for further proceedings."[3]

For want of concurrence of more than two Justices on any controlling point of law, Myers decided the above result only. As said in Huron Land Co. v. Davison, 131 Mich 86, 88, of Wait v. Baldwin, 60 Mich 622:

"Two Justices concurred in the result only, but whether they questioned this point or some other is not shown. Such opinions are not conclusive, unless the opinions show in what points the justices concur, and on what they dissent. It is evident that upon some points of the opinion the justices were evenly divided. We do not, therefore, feel bound by this language of the opinion.";[4]

and later in Groening v. McCambridge, 282 Mich 135, 140, of Wright v. Wright,[5] 99 Mich 170 (23 LRA 196):

"This language is not authority because it was concurred in by only two Justices and not by a ma-

[3] (December 10, 1965): The Myers Case has not as yet been tried. It remains pending in the Genesee circuit and is open to rehearing here without affecting any vested right or action taken in reliance upon our act of vacating the mentioned summary judgment.
[4] The Michigan Supreme Court was then composed of only 4 Justices.—REPORTER.
[5] In Wright v. Wright, the 5-member Michigan Supreme Court was divided as follows: LONG, J., was joined by McGRATH, C. J.; GRANT, J., wrote a separate concurring opinion; while HOOKER, J., dissented in an opinion signed by MONTGOMERY, J.—REPORTER.

jority of the Court. *Buhler* v. *Trombly,* 139 Mich 557, 568; *Westbrook* v. *Elder,* 264 Mich 138."

The true rule, which I, at least, mean to follow, appears in 20 Am Jur 2d, Courts, § 195, pp 530, 531:

"A decision by an equally divided court does not establish a precedent required to be followed under the *stare decisis* doctrine. And where the members of the court unanimously or by majority vote reach a decision but cannot, even by a majority, agree on the reasoning therefor, no point of law is established by the decision and it cannot be a precedent covered by the *stare decisis* rule."

*Myers* should be reheard, rewritten, and decided anew prior to decision of the present case. Since that is stubbornly out of the question now, I allude in support of affirmance to two events of significance which have occurred since *Myers* was decided and the present case was submitted. Both point up the developing need for prospective effect of a rule of law the judiciary has decided to make effective in the place and stead of an existing and concededly *settled* rule of law; the situation being one where a specific litigant or class of litigants has relied upon the former rule as such litigant or class has gone about its pertinent legal affairs,[6] or, of equal consequence, has relied upon a correspondingly *settled* rule of law as such litigant or class has gone about prosecuting or defending its rights in our trial courts.

The first of these events was the enactment, and effect as of July 1, 1965, of PA 1964, No 170 (CL

---

[6] See quotation and comment (*Williams* v. *City of Detroit*, 364 Mich at 280, 281, 282) of and with respect to the paper Justice ADAMS, then Attorney General of Michigan, wrote in 1960 for the Michigan School Board Journal. The subject was insurance against tort liability of governmental units, whether public funds could be expended to acquire it, and the necessity for reliance upon the immunity defense (Michigan School Board Journal [vol 6, Nos 7, 8] September and October, 1960).

1948, § 691.1401 *et seq.* [Stat Ann 1965 Cum Supp
§ 3.996(101) *et seq.*]).   The title of the act reads:

"An act to make uniform the liability of municipal
corporations, political subdivisions, and the State,
its agencies and departments, when engaged in a gov-
ernmental function, for injuries to property and per-
sons caused by negligence; to define and limit such
liability; to define and limit the liability of the State
when engaged in a proprietary function; to authorize
the purchase of liability insurance to protect against
loss arising out of such liability; to provide for de-
fending certain claims made against public officers
and paying damages sought or awarded against
them; and to repeal certain acts and parts of acts."

The second is the United States Supreme Court's
opinion of *Linkletter* v. *Walker* (June 7, 1965), 381
US 618 (85 S Ct 1731, 14 L ed 2d 601), removing all
doubt that it is eminently better, when a decision to
overrule is agreed upon, that such overrulement be
made effective prospectively.

*Williams* v. *City of Detroit,* 364 Mich 231, accom-
plished much that all of us may have overlooked
since decision thereof in 1961.   That case literally
drove the legislature to act with respect to the in-
justice of *unlimited* and unrestricted governmental
immunity from tort liability, and thus was Dean
Allan F. Smith's moving plea for legislative action
fulfilled at long last.   That plea, written in 1949 (48
Mich L Rev 41), was quoted at length in *Williams,*
*supra,* at 284, 285.   Dean Smith's conclusion is quot-
ed again for emphasis of the postulate that, the
legislature having acted comprehensively in this
field of State policy and State lawmaking, both
*Myers* and Keenan should be governed by the law as
it stood prior to the effective date of said Act No 170:

"Adequate reformation can be achieved only by
legislation.   Legislation, like an efficient incinerator,

can destroy completely the effect of the decisions which now perpetuate the doctrine of immunity. It must be legislation which will shift the basic approach to the problem; instead of having a general governmental immunity with certain exceptions, a general governmental responsibility with limited exceptions is needed. Those exceptions are to be determined not by reference to an outmoded dogma that 'The king can do no wrong,' but by reference to social interests which will be served by granting immunity."

Since the Court is unwilling to reconsider our valueless writings for the *Myers Case,* prior to decision of this case, I vote to affirm the circuit court's judgment of no cause as entered in favor of the defendant county of Midland.

DETHMERS, J. (*dissenting*).  For reasons stated in my dissenting opinion in *Myers* v. *Genesee County Auditor,* 375 Mich 1, I also dissent here and favor affirmance of the summary judgment for defendant entered in the court below.

KELLY, J., concurred with DETHMERS, J.