NEGRI v SLOTKIN

Docket No. 57795. Argued May 4, 1976 (Calendar No. 18).—Decided July 8, 1976.

Plaintiff George B. Negri, III, brought an action for damages for injuries sustained while he was a guest passenger in a vehicle driven by defendant Todd J. Slotkin and owned by defendant Hugo Slotkin. The Oakland Circuit Court, Frederick C. Ziem, J., overruled the plaintiff's timely objection that the guest passenger statute was unconstitutional. The court instructed the jury on the law of gross negligence and wilful and wanton misconduct, and a verdict of no cause of action was returned. The Court of Appeals, Bashara, P. J., and J. H. Gillis and R. M. Maher, JJ., denied a motion for peremptory reversal on the ground that *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), is applicable only to the facts of that case (Docket No. 22054). Plaintiff appeals. *Held:*

Four justices constitute a quorum of the Court. The lower courts are bound by a decision of the Supreme Court rendered by a number of justices less than four who nevertheless constitute a majority of a legally constituted quorum of the Court. This is to be distinguished from the case in which a majority of the justices sitting fail to concur in the reasoning for the decision, but concur in the result. A different rule would adversely affect the functioning of the judicial system and urgent matters would be held in limbo until a majority of four justices could be mustered.

Justice Coleman dissented on the ground that the doctrine of stare decisis was developed to bring about certainty, stability and predictability of the law, and giving a precedential effect to a decision signed by less than a majority of the Supreme Court defeats the purpose of the rule. The Court can avoid vacillation and achieve optimum stability by giving precedential effect only to opinions with at least four signatures of the seven-member Court.

The Court of Appeals is reversed.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 20 Am Jur 2d, Courts § 201.

OPINION OF THE COURT

1. COURTS—SUPREME COURT—OPINIONS—STARE DECISIS.

   A decision by three justices of the Supreme Court who constitute a majority of a legally constituted quorum is binding on the Court of Appeals and the trial courts.

2. COURTS—SUPREME COURT—OPINIONS—STARE DECISIS.

   A plurality decision of the Supreme Court in which no majority of the justices participating agree as to the reasoning does not constitute binding precedent.

DISSENTING OPINION

COLEMAN, J.

3. COURTS—SUPREME COURT—OPINIONS—STARE DECISIS.

   *The Supreme Court can avoid vacillation and achieve optimum stability of the law by giving precedential effect only to opinions with at least four signatures of the seven-member Court.*

*Lopatin, Miller, Bindes & Freedman* (by *Michael A. Gantz* and *Michael Gagleard)* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jeannette A. Paskin* and *Charles A. Huckabay)* for defendants.

WILLIAMS, J. Leave to appeal was granted in the instant proceeding to consider a single issue: whether a decision rendered by less than four justices who nevertheless constitute a majority of a legally constituted quorum is binding on the Court of Appeals and the trial courts. It is our opinion that the lower tribunals are bound by such a decision.

Plaintiff was injured while a guest passenger in an automobile driven by defendant Todd James Slotkin and owned by defendant Hugo Slotkin. An action was filed in Oakland Circuit Court. Despite plaintiff's objections at trial that the guest passenger act was unconstitutional, the matter was sent to the jury and a judgment of no cause of action

was entered based on the trial court's submission of this cause to the jury on the unconstitutional guest passenger act's theory of gross negligence and wilful and wanton misconduct only.

The Court of Appeals initially held this matter in abeyance pending our decision in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). However, on October 31, 1975, the Court of Appeals denied plaintiff's motion for peremptory reversal reasoning that:

"this panel considers that the decision reached in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655 (1975), is applicable as the law of that case only. See *People v Jackson,* 390 Mich 621, 627 [212 NW2d 918] (1973)."

We granted leave on March 29, 1976, 396 Mich 844.

Section 211(3) of the Revised Judicature Act provides: "[a] majority of the justices shall constitute a quorum for hearing cases and transacting business".[1] Four justices constitute a quorum and a decision rendered by a majority of that quorum not only disposes of the case but is binding on the lower courts. *Sullivan v Scott,* 164 Mich 467, 468–469; 129 NW 864 (1911) is instructive:

"This court was made a tribunal of eight justices by Act No. 250, Pub. Acts 1903. Previous to that time there were five, of whom three constituted a quorum (1 Comp. Laws, § 185), and two being a majority of the quorum their concurrence in an opinion was an adjudication. * * * By these provisions of the statute five now constitute a quorum, and when three of the five concur in an opinion it disposes of the case, and judgment may be entered upon the opinion although only three concur, and if no motion for rehearing be made it stands as

---

[1] MCLA 600.211(3); MSA 27A.211(3).

valid as any judgment or decree. We have even held that four out of seven not only may make a valid judgment, but that it is *stare decisis. Dolph v. Norton,* 158 Mich. 422 (123 NW 13) [1909]."[2]

See also *Commonwealth v Mason,* 456 Pa 602; 322 A2d 357, 358 (1974).

This Court has recently passed through an extended period of time during which the Court has, without a full complement of justices, presided over and disposed of many matters. While at present seven justices are sitting, there always exists the possibility of reductions through death or resignation or more temporary reductions through disqualifications in particular cases or illness in the future. Were we to hold that 3-to-2 or 3-to-1 decisions are not binding on the Court of Appeals and trial courts, the functioning of our judicial system would be adversely affected. Urgent matters would be held in limbo until such time as a majority of four justices could be mustered.

The United States Supreme Court's recent treatment of *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), is instructive. In *Fuentes,* a 4-to-3 decision authored by Justice Stewart, the majority struck down the replevin laws of two states because writs could be issued by a court clerk without notice to the debtor of opportunity for a hearing. Then in *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895, 40 L Ed 2d 406 (1974), the Supreme Court upheld Louisiana's sequestration law. In *Mitchell* the Court sought to distinguish *Fuentes.*[3]

---

[2] *But see* concurring opinion of SOURIS, J., in *Keenan v Midland County,* 377 Mich 57, 61; 138 NW2d 759 (1966).

[3] The Court, seeking to distinguish *Fuentes,* said:

"As in *Bell v Burson,* [402 US 535; 91 S Ct 1586; 29 L Ed 2d 90

Noteworthy in this context is that none of the justices at any time suggested that *Fuentes* was not a precedent of which lower courts must and the Supreme Court itself should take cognizance.

In denying plaintiff's motion for peremptory reversal, the Court of Appeals relied upon *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973). Its reliance was misplaced. In *Jackson* we considered the impact on this Court of a case in which a majority of the justices sitting failed to concur in the reasoning for the decision.[4] In *Manistee Bank & Trust Co,* a majority of the justices sitting *did concur* in the reasoning.

Plurality decisions in which no majority of the justices participating agree as to the reasoning are not an authoritative interpretation binding on this Court under the doctrine of *stare decisis.* See *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973), and cases cited therein.

---

(1971)] where a driver's license was suspended without a prior hearing, when the suspension was premised on a fault standard, see *Vlandis v Kline,* 412 U. S. 441, 446–447 [93 S Ct 2230; 37 L Ed 2d 63] (1973), in *Fuentes* this fault standard for replevin was thought ill-suited for preliminary ex parte determination. In Louisiana, on the other hand, the facts relevant to obtaining a writ of sequestration are narrowly confined. As we have indicated, documentary proof is particularly suited for questions of the existence of a vendor's lien and the issue of default. There is thus far less danger here that the seizure will be mistaken and a corresponding decrease in the utility of an adversary hearing which will be immediately available in any event.

"Of course, as in *Fuentes,* consideration of the impact on the debtor remains. Under Louisiana procedure, however, the debtor, Mitchell, was not left in limbo to await a hearing that might or might not "eventually" occur, as the debtors under the statutory schemes before the Court in *Fuentes.* Louisiana law expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued.' Art. 3506." 416 US 617, 618.

[4] The case discussed in *Jackson* was *People v Thomas,* 387 Mich 368; 197 NW2d 51 (1972). In *Thomas* the Court split 3-3-1. Justice BLACK concurred in the result reached by Justices BRENNAN, WILLIAMS and ADAMS. Thus there was a majority only with regard to the result which was to affirm the trial court.

We hold that a three-to-two decision of this Court such as that reached in *Manistee Bank & Trust Co* is binding on the Court of Appeals and the trial courts until overruled by a later decision of this Court, including, if that be the case, a later three-to-two decision of this Court. We limit our decision to the question before us, namely are lower courts bound by majority decisions of this Court of less than four justices. We, of course, answer that affirmatively.

The Court of Appeals and trial court are reversed and the matter is remanded for further action not inconsistent with this opinion.

KAVANAGH, C. J., and LEVIN, FITZGERALD, LINDEMER, and RYAN, JJ., concurred with WILLIAMS, J.


COLEMAN, J. *(dissenting).* The doctrine of stare decisis was developed to bring about certainty, stability and predictability of the law.[1] Giving stare decisis effect to a decision signed by less than a majority of the whole Court defeats the purpose of the rule.

Whatever shade of difference there may be between "stare decisis" and "binding on the Court of Appeals and trial courts" is primarily one of semantics. We do not delude ourselves. The Supreme Court can change even long-established law with enough votes—and this fact goes to the heart of the problem. How many signatures are "enough" to void, reverse or change the course of common law?

We can avoid vacillation and achieve optimum stability by giving precedential effect only to opin-

---

[1] *Parker v Port Huron Hospital,* 361 Mich 1, 10; 105 NW2d 1 (1960).

ions with at least four signatures of this seven-person Court.

In *Keenan v Midland County,* 377 Mich 57, 61, 64; 138 NW2d 759 (1966), when there were eight justices, Justice SOURIS discussed the early cases relied upon by the majority *(Dolph v Norton,* 158 Mich 417; 123 NW 13 [1909], and *Scott v Sullivan,* 164 Mich 467; 129 NW 864 [1911]). In his concurrence in result, he analyzed the cases differently to the end that they did not stand for the proposition that a vote of less than the majority of the Court constitutes stare decisis. He continued:

"Furthermore, the objectives sought to be achieved by the doctrine of *stare decisis*—stability of law and its concomitant predictability—are far more certain of achievement when a majority of the full Court commits itself to a statement of law binding on all other courts in the State and subject to change thereafter only upon further action by a majority of the full Court, by the people themselves by constitutional amendment, or, in some cases, by legislative action."

Thus, the holdings of *Dolph* and *Sullivan* are subject to a different interpretation.

Further reinforcing the idea that the majority opinion in *Dolph* does not settle the question, several more recent cases have, without discussion of *Dolph,* reached an opposite conclusion. In *In re Curzenski Estate,* 384 Mich 334; 183 NW2d 220 (1971), the majority (4 out of 7) opinion rejected an earlier case as precedent since the then eight-member Court ended in a 4-to-3 split with one member not sitting. A majority of five in an eight-member Court was mandated for precedent, not just a majority of the participants. "No opinion of *Critchell* was endorsed by a majority of our then

eight-man Court. The result was no precedent." *In re Curzenski Estate, supra,* at 335 fn 1.

Similarly, in *Sommers v Flint,* 355 Mich 655, 662; 96 NW2d 119 (1959), the Court declined to follow an earlier case as stare decisis. The earlier case, *Younglas v Flint,* 345 Mich 576; 77 NW2d 84 (1956), tallied four for the Court's opinion, two for the dissent, one concurrence in result and one not participating. The *Sommers* Court noted:

> "The views on this topic have been recently and carefully considered by this Court in the 2 opinions in *Younglas.* What has changed is not the reasoning of the members of the Court, but the composition of the Court itself. *Younglas was decided too recently and by too close a margin to carry great weight under the doctrine of stare decisis.* The majority of this Court, as presently constituted, feels that the modern and authoritative view on the constitutional questions presented is that of the minority opinion in *Younglas* which we hereby adopt and incorporate by reference." (Emphasis added.)

My brothers contend that if 3-to-2 or 3-to-1 decisions are not treated as precedent then important questions will remain in limbo. This is not true. The question *is* decided since the state of the law remains as before. Only the immediate parties are bound. This is no different from the situation of an evenly divided court, which affirms the result below, or the situation where a majority is achieved through concurrence, not signature. The status quo is maintained until a question receives authoritative treatment by a majority of the entire Court.

A recent Court of Appeals decision illustrates the confusion following the upset of established precedent by less than a majority of the whole Court. In *Werkhoven v Grandville (On Remand),* 65 Mich App 741, 742–743; 238 NW2d 392 (1975),

the Court of Appeals held, Judge McGregor writing:

"Previously, we ruled that plaintiffs had failed to sustain their burden in rebutting the presumption of constitutionality to which the defendant's zoning ordinances were entitled. In doing so, we relied heavily upon the majority opinion in *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974).

"Following our decision, plaintiffs filed an application for leave to appeal to the Supreme Court. While this application was still pending, the Supreme Court decided three cases, all of which, like the present case, involved zoning restrictions on mobile home parks. The Supreme Court, in lieu of taking any action on plaintiffs' application, remanded the matter to us 'for reconsideration in light of the opinions of the Justices of this Court' in the *Sabo, Smookler* and *Nickola* cases.

"In *Sabo,* Justice LEVIN, with Justices KAVANAGH and FITZGERALD concurring, stated that the proper test to be applied in the majority of zoning cases should not be the *Kropf* test of whether or not the present zoning is unreasonable or confiscatory, but instead, should be whether or not the proposed use is reasonable under all the circumstances. However, Justice WILLIAMS, in concurring, and Justice COLEMAN, in dissenting, both continued to adhere to the *Kropf* test in which they had originally concurred. The remaining members of the Court, Justices SWAINSON and LINDEMER, did not participate in any of the three decisions.

"It is evident from the foregoing that there has been no agreement by a majority of the Supreme Court to adopt Justice LEVIN's approach regarding zoning cases."[2]

In *Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975), a three-vote majority overruled the solid precedent of *Kropf v Sterling Heights,* 391

[2] *See Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975), *Smookler v Wheatfield Twp,* 394 Mich 574; 232 NW2d 616 (1975), *Nickola v Grand Blanc Twp,* 394 Mich 589; 232 NW2d 604 (1975).

Mich 139; 215 NW2d 179 (1974) which traced its origins to *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957). Other strong precedent also was overruled.[3]

The majority also relies strongly upon the recent treatment by the United States Supreme Court of their 4-3 decision in *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972).

However, in *Roofing Wholesale Co v Palmer,* 108 Ariz 508; 502 P2d 1327, 1331 (1972), the Arizona Supreme Court refused to follow *Fuentes* stating:

"We do not believe, however, that it is unreasonable to ask that before we are required to declare unconstitutional statutes enacted by our legislature with the resulting chaos to an important part of our commercial and contract law, that the United States Supreme Court speak with at least a majority voice on the subject."

The Supreme Court of Arizona found that a decision by less than a majority of the whole court lent instability to the law.

As present counsel remind us, the 3-to-2 vote in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975) found the guest passenger act unconstitutional. By that vote we therefore overcame the presumption of constitutionality normally afforded a statute. We also have undoubtedly caused considerable activity by insurance companies to bring policies and premiums in line with the change of law. Guest passengers foreseeably have been making claims or filing suits. However, litigation has been in limbo because who

---

[3] *See Stadle v Battle Creek Twp,* 346 Mich 64; 77 NW2d 329 (1956). *Stadle* was a 7-to-0 decision with one justice not participating.

*Reva v Portage Twp,* 356 Mich 381; 96 NW2d 778 (1959). *Reva* was an 8-to-0 decision.

Both *Reva* and *Stadle* espouse the *Kropf—Brae Burn* philosophy.

could foretell what the full Court might decide in the case at bar and in the application for rehearing of a companion case?[4]

The statute might have been given new life had we again considered the constitutional question. Then, all concerned would have had to undo what had been done in reliance upon *Manistee*.[5] Even if endowed with the weight of stare decisis, a three-member opinion of the Court can be overruled promptly, hence the importance of an opinion endorsed by at least a majority of the Court.

Even if we should adhere to a policy of self-discipline whereby we would issue no opinion signed by less than a majority if the result were to declare a statute unconstitutional, there would remain serious problems.

Such a policy would do little to augment predictability in an important case involving a new constitutional interpretation of a statute. New statutory constructions and other matters of import can set in motion vast changes in business, industry, labor and government procedures and personnel. However, the next similar case could result in an opposite decision without any change of Court personnel *(e.g.,* two or more justices could be disqualified in one case and not in the next).

Precedent regarding the matter at issue is divided. Regardless, we should employ our own common sense and intimate knowledge of the history and mechanics of court operation to arrive at a decision in this case conducive to the most stable, predictable and reliable law possible. The world changes and the law changes with it. It need not, however, be subjected needlessly to day by day

---

[4] *Longnecker v Noordyk-Mooney, Inc,* 394 Mich 696; 232 NW2d 654 (1975).

[5] In the interest of minimizing general confusion, we agreed to hear only the issue regarding the significance of a 3-to-2 vote.

changes generated within the Supreme Court by changing participants.

The question involved is not subject to guarantees of stability of law whichever way we decide the issue. My colleagues have endorsed a well-reasoned and persuasive opinion. However, the other side to the problem is worthy of notice.

Although I recognize a close question and respect the analysis of the majority, I do not believe it to be the most reliable course. A decision reached by a majority of the Court best accords with the underlying rationale for binding precedent.